*Fairfield*,
July, 1847.

Peck
*v.*
Bacon.

## PECK *against* BACON.

In an action on the case for fraud in the sale of a patent-right in an undivided fourth part of certain territory, the plaintiff was allowed, by the superior court, at a term subsequent to that to which the suit was brought, to amend his declaration, originally consisting of three counts, by adding a fourth count, setting forth substantially the same transaction and the same injury, but containing a further and more minute statement of the injurious acts of the defendant; it was held, on a motion in error, that such amendment was allowable.

On the trial of such action, a witness for the plaintiff, after relating a long conversation between himself and the defendant, about the sale of the patent-right in question, testified, that the defendant, in the course of such conversation, said, that "the best way of selling patent-rights, was, taking negotiable notes and indorsing them, and then no questions could be made about the patents;" but, on cross-examination, the witness said, that he did not know that this remark was connected with the other conversation. The plaintiff had claimed, that this mode of selling patent-rights, was the exact thing done in the present case; and in connexion with such conversation and remark, much other testimony was introduced to prove the fraud alleged. On a motion for a new trial by the defendant, for the admission of irrelevant testimony, it was held, 1. that it was the province of the jury to decide upon the connexion and effect of the parts of this extended conversation; 2. that this being the defendant's motion, it belonged to him to show that the testimony was irrelevant; 3. that it might have been, and in fact was, relevant and important.

In the assignment of a patent-right, recording in the patent office, pursuant to the 11th section of the act of Congress of 1836, is not a constituent part of the transfer of title, and is required only to give notice.

Therefore, where *A* assigned to *B* certain parts of a patent-right, stipulating that they were free from incumbrance; and in an action brought by *B* against *A* for a breach of this agreement, it appeared, that before the assignment to *B*, the same parts of such patent-right had been assigned to *C*, of which *A* had actual notice, but this assignment was not recorded until after *A's* assignment to *B ;* it was held, that such notice precluded *A* from availing himself of such want of recording as a defence against the claim of *B*.

THIS was an action on the case for fraud in the sale of certain patent-rights for an undivided fourth part of the states of *Mississippi* and *Tennessee*.

The declaration originally contained three counts. It will be sufficient for the present purpose, to state the first, and that in a form somewhat condensed. The plaintiff declared, That on the 26th of *July* 1841, he, at the special instance and request of the defendant, bargained with him, to purchase of him the right and privilege of making, using, constructing and vending to others to be used, an alleged invention or improvement, called *Raymond's Rotary Shingle Machine*, in an undi-

vided fourth part of the state of *Mississippi*, and also the same right to *Raymond's Patent Shingle Machine*, in an undivided fourth part of the state of *Tennessee;* the said rights, to the extent aforesaid, to be conveyed, by the defendant, to the plaintiff, by deed under his hand and seal : and the plaintiff then and there agreed to pay to the defendant, for the interest or proportion aforesaid to be conveyed to him by the defendant, the sum of 1000 dollars ; and the defendant thereupon, then and there conveyed to the plaintiff, by deed, said rights and interest, in said states of *Mississippi* and *Tennessee.* And the defendant, to induce the plaintiff to make such bargain and purchase, did falsely and fraudulently affirm and declare to the plaintiff, that one *Joseph S. Raymond* had, before this time, obtained, under authority of the *United States,* a patent for a new and useful invention or improvement, called *Raymond's Rotary Shingle Machine*, granting the exclusive right of constructing, using and vending to others to be used, said invention, within the *United States*, for the period of fourteen years from the 5th day of *August* 1837 ; and that, by legal conveyances, he, the defendant, owned the exclusive right of constructing, using and vending to others to be used, said invention or improvement, within the states aforesaid, to the extent aforesaid, for and during the whole period of time last aforesaid, *viz.* during the unexpired term of said patent. And the defendant, then and there, further falsely and fraudulently affirmed and declared to the plaintiff, that he had good right to sell and dispose of the same, to any and all persons ; and that the same was free from all incumbrance. And the defendant, then and there, further falsely and fraudulently affirmed and declared to the plaintiff, that by virtue of the purchase so by him made of the defendant, the plaintiff would become entitled to and vested with the exclusive right of construction, using and vending to others to be used, said improvement or invention, to the extent aforesaid, within and for the territory aforesaid, for and during the whole of the unexpired portion of the time for which said patent was granted. And the plaintiff, relying on said false and fraudulent representations of the defendant, and believing the same to be true, purchased said right and interest in said portion of the states of *Mississippi* and *Tennessee*, for the sum of 1000 dollars, and agreed to pay the defendant said sum therefor. That the sev-

eral representations of the defendant to the plaintiff, so made, were wholly false and fraudulent, and the defendant did not, at the time of said sale to the plaintiff, own said right and interest, or have the right to sell and convey the same to the plaintiff; that the same was not free from all incumbrance; and that said deed from the defendant to the plaintiff did not convey the free and undisputed right, title and interest in said states to the plaintiff, but, at the time of said conveyance, they were encumbered, by prior conveyances to divers persons, of which the defendant had full knowledge, and of which the plaintiff was wholly ignorant: that said patent-right was not a new and useful invention, but was wholly useless and of no value; which the defendant, at the time of said sale, well knew, and of which the plaintiff, at said time, was wholly ignorant: that by means of said false affirmations and fraudulent representations of the defendant, the plaintiff was induced to make said purchase, and to pay said sum of 1000 dollars to the defendant; whereby the plaintiff has wholly lost the same, and been put to great trouble and expense in the premises.

The second count alleged a sale of *Raymond's Rotary Shingle Machine,* by the false and fraudulent representations of the defendant, in an undivided fourth part of the states of *Mississippi* and *Tennessee,* with the exception of eighteen counties in the latter state.

The third count alleged a sale of the same portion of the same patent-right, in the same territory, for the sum of 2000 dollars, with the loss of 500 dollars in time and money in attempting to dispose of the right in question.

The cause was first brought to the adjourned term of the superior court, holden at *Fairfield,* on the second *Tuesday* of *April* 1844; and thence, by legal continuances, it came to the term of that court holden at *Danbury,* in *October* 1845; when the plaintiff moved to amend his declaration, by adding thereto the following count: "And the plaintiff further declares and says, that at the city of *Middletown,* on said 26th day of *July* 1841, the defendant proposed to the plaintiff, to purchase of him, the defendant, the exclusive right and privilege of using, constructing and vending to others to be used, the invention or improvement in the preceding counts mentioned, and known as *Raymond's Rotary Shingle Machine,* for the unexpired term of said *Raymond's* patent, *viz.* fourteen years from the

15th day of *August* 1837, in and to the undivided one-fourth part of the state of *Mississippi,* and in and to the undivided one-fourth part of the state of *Tennessee,* with the exception of eighteen counties in said last-mentioned state, *viz.* [specifying them.] And to induce the plaintiff to make said purchase, the defendant did, then and there, falsely and fraudulently affirm and declare to the plaintiff, that he, the defendant, then had and owned the sole and exclusive right and privilege of using, constructing and vending to others to be used, the said machine, in the entire state of *Mississippi,* and also in the entire state of *Tennessee,* with the exception of said eighteen counties, for and during the term aforesaid; and the defendant did, then and there, further falsely and fraudulently affirm and declare to the plaintiff, that his, the defendant's, title so to use, construct and vend said machine, in said states, was clear and indisputable, and wholly free from any incumbrance or embarrassment; and that, by purchasing said right, in and to the undivided fourth part of said states as aforesaid, he, the plaintiff, would become a tenant in common with the defendant in the exclusive right of so using, constructing and vending said machine, in said states as aforesaid, in such proportions as that the plaintiff would own the one-fourth, and the defendant three-fourths, of said right and privilege; and that, as such tenants in common, they, the plaintiff and defendant, would be vested with the sole and exclusive right of using, constructing and vending to others to be used, said machine, in said states, as aforesaid. And the plaintiff says, that believing in the declarations and affirmations so made to him, by the defendant, as aforesaid, and induced by them thereto, he did, then and there, purchase of the defendant, the right aforesaid, in and to the undivided one-fourth part of the state of *Mississippi* and of the entire state of *Tennessee,* with the exception of said eighteen counties; and did, then and there, agree to pay, and did in fact pay, to the defendant, the sum of 1000 dollars for the same. Now the plaintiff says, that said affirmations and declarations, so made to him, by the defendant, as aforesaid, by which he was induced to make said purchase, were and are false and fraudulent, and were then and there well known by the defendant, to be false, in this, *viz.* that the defendant then had not the sole and exclusive right of using, constructing, and vending to others to be used, said machine,

in the entire state of *Mississippi*, as was by him declared and affirmed ; for that, long before the defendant's title to use, construct and vend said machine in said state, had accrued, *viz.* on the 25th of *April*, 1839, the right of using, constructing and vending said machine, in and to the undivided two-third parts of said *Mississippi*, had been sold, and in due form of law assigned, to *A. M. Upshaw, William A. M. Brooke,* and *E. Slocum,* which deed so conveying said right, was duly recorded, in conformity to the laws of the *United States,* and in virtue of which, said *Upshaw, Brooke* and *Slocum* became and were vested with said right in and to said state of *Mississippi* as aforesaid, and owned the same when said purchase was so made by the plaintiff. And said affirmations and declarations, so made to the plaintiff by the defendant, as aforesaid, were further false and fraudulent, and were then known by the defendant to be false, in this, *viz.* that the defendant had not then the sole and exclusive right of using, constructing and vending to others to be used, said machine, in the state of *Tennessee,* except said eighteen counties ; for that long before the defendant's title to use, construct and vend said machine, in any portion of said state, had accrued, *viz.* on the 16th day of *March* 1839, the right of so using, constructing and vending said machine, in ten counties of said state, and other than the eighteen counties so excepted as aforesaid, was sold, and, in due form of law, conveyed to *Oscar Willis,* and was, when said purchase was so made by the plaintiff as aforesaid, vested in and belonged to said *Willis :* and that, on said 16th day of *March* 1839, the right of so using, constructing and vending said machine, in five counties of the state of *Tennessee,* other than said eighteen counties, so excepted as aforesaid, and other than the ten counties so conveyed to said *Oscar Willis* as aforesaid, was sold, and, in due form of law, conveyed to *Abner B. Jones,* and was, when said purchase was so made by the plaintiff, vested in, and of right belonged to, said *Abner B. Jones.* And the plaintiff says, that the defendant's title to the exclusive right and privilege of using, constructing and vending said machine, in said states of *Mississippi* and *Tennessee,* was not, as was by him falsely affirmed, unencumbered and free from difficulty and embarrassment, but, on the contrary thereof, was encumbered and embarrassed, by means of the conveyances aforesaid ;

*Fairfield,*
July, 1847.

Peck
*v.*
Bacon.

all of which was well known to the defendant, but of which the plaintiff was wholly ignorant : and the plaintiff did not, by said purchase, as was falsely affirmed by the defendant that he would, become a tenant in common with the defendant, in the exclusive right of using, constructing and vending said machine, in said states of *Mississippi* and *Tennessee* as aforesaid, and in the proportion above stated, but, on the contrary thereof, he became a tenant in common of said right, in said state of *Mississippi*, with said *Upshaw, Brooke* and *Slocum*, men living remote from the plaintiff, with whom he had no acquaintance, and in whom he had no confidence ; and that he acquired, by virtue of said purchase, no right of using, constructing and vending said machine, in the fifteen counties of the state of *Tennessee*, so sold and conveyed to said *Willis* and *Jones*, as aforesaid ; and that, by reason of said false and fraudulent representations, so made by him the defendant as aforesaid, he has been greatly injured, and has wholly lost the consideration paid for said right, which is of no value to the plaintiff."

The defendant objected to the insertion of this count in the plaintiff's declaration, as an amendment thereof ; but the court overruled the objection, and allowed the amendment, on payment of costs.

The cause was tried, on the general issue, at *Danbury, October* term 1846, before *Williams*, Ch. J.

The plaintiff claimed to have proved the facts stated in his declaration ; and that, in pursuance of the purchase therein stated, he gave to the defendant two promissory notes, payable to his order, on the 1st of *May* following ; and that, to carry into effect his fraudulent purpose, the defendant indorsed one of these notes to his son, before it became due, to prevent the plaintiff from knowing the real facts attending the sale ; and that an action was brought thereon, by the indorsee, and a recovery had thereon. In connexion with this and other evidence, the plaintiff introduced the testimony of one *Crofut* to a conversation the defendant had with him, relative to the sale of said patent-right to the plaintiff; which conversation might have lasted two hours. The witness testified, that in the course of this conversation, the defendant remarked, that "the best way of selling patent-rights, was, by taking negotiable notes, and indorsing them, and then no questions could be

*Fairfield,*
July, 1847.

Peck
*v*
Bacon.

made about the patents." Upon cross-examination, the witness testified, that he did not know that this had any connexion with the conversation about the sale to the plaintiff of the patent-right in question. The defendant thereupon objected to this last part of the testimony of *Crofut*, as evidence in any way relevant to the case; but the court admitted it.

The plaintiff also claimed, that the defendant, at the time of the sale, had not the title to the patent-right in the whole of *Tennessee*, excepting said eighteen counties; and upon this point, it was admitted, that the claims of title to the patent in that state, as shown by the records of the patent-office of the *United States*, from the conveyances thereof which had been made, copies of which were exhibited in evidence, were as follows:

1st. *Joseph S. Raymond*, who was the patentee, to *Stephen Rogers*, dated *June* 24th, 1839, recorded *August* 2nd, 1839, of the whole state.

2nd. *Stephen Rogers*, by his attorney, *George T. Gilbert*, to *Oscar Willis*, dated *March* 16th, 1839, recorded *April* 23d, 1839, of the counties of *Sumner, Robertson, Davidson, Williamson, Mawny, Bedford, Ruthford, Wilson, Smith* and *Lincoln*—ten counties in *Tennessee*.

3rd. *Stephen Rogers*, by his attorney, *George T. Gilbert*, to *Abner B. Jones*, dated *March* 16th, 1839, recorded *April* 23rd, 1829, of the counties of *Tipton, Shelby, Hardiman, Fayette* and *McNairy*—five counties in *Tennessee*.

4th. *Stephen Rogers* to *George T. Gilbert* and *Stephen Kitteridge*, dated *August* 27th, 1839, recorded *November* 25th, 1829, of the whole state of *Tennessee*.

5th. *George T. Gilbert* and *Stephen Kitteridge*, by his attorney, *George T. Gilbert*, to *Nathaniel Bacon*, dated *November* 5th, 1840, recorded *November* 12th, 1840, of the whole state of *Tennessee*, except the eighteen counties mentioned in the declaration as excepted.

The plaintiff thereupon claimed, that when the conveyance was made to him, the defendant had no title to the ten counties conveyed to *Willis*, nor to the five counties conveyed to *Jones ;* and though the conveyances to *Willis* and *Jones* were prior in date to the conveyance from *Raymond* to *Rogers*, yet that *Rogers* then had a good title to the patent-right in the whole of the state of *Tennessee*. In support of this claim, the

plaintiff insisted he had proved, that on the 4th of *November* 1837, a good and valid deed of all the right in that state was given by *Raymond* to *Rogers*, and that this was lost; and that the deed of *June* 24th, 1839, from *Raymond* to *Rogers*, was given in lieu thereof, and as a substitute therefor; and in connexion therewith, the plaintiff offered evidence to prove, and claimed he had proved, that the defendant had actual notice of the deed of the 4th of *November* 1837, from *Raymond* to *Rogers*, and of the loss thereof, and of the conveyance to *Willis* and *Jones;* and he prayed the court to instruct the jury, that if they should find these facts to be true, such knowledge would affect the defendant, as if the deed was, in fact, recorded.

The defendant objected to any evidence of an assignment by *Rogers* to *Willis* and *Jones,* of a date prior to any recorded, and of any knowledge of such assignment by the defendant.

The court admitted such evidence, subject to the charge to be given, in relation to the knowledge of the defendant of the existence of a former deed from *Raymond* to *Rogers.*

The defendant then requested the court to instruct the jury, that if they should find the facts as claimed by the plaintiff, he could not be affected, by any such knowledge of an unrecorded assignment.

The court did not so charge the jury; but, on the contrary, instructed them, that if they should find the facts as claimed by the plaintiff, and that actual notice of such lost deed came to the knowledge of the defendant, before he made his purchase, and before he made the representations to the plaintiff, the defendant would stand upon the same ground as if said deed from *Raymond* to *Rogers* had been recorded.

The jury returned a verdict for the plaintiff; and the defendant moved for a new trial. He also filed a motion in error, assigning for error, the allowance of the amendment to the plaintiff's declaration.

*Hawley* and *Dutton*, in support of the motions, contended, 1. That the amendment ought not to have been allowed. It changes the ground of action. *Peck* v. *Sill, 3 Conn. R.* 157. The identity of the ground of action does not depend upon the identity of the contract. A declaration on the warranty

of a horse, cannot be changed into one on the warranty of an ox, though both warranties are in the same contract. In slander, a charge of theft cannot be changed into one of adultery. In this case, the ground of action originally was a failure of title to the thing sold. The amendment makes it a failure in what was not sold, and a failure of a tenancy in common with the defendant. If the defendant had been defaulted at the first term of the court, he would have had no notice of the matters charged in the new count.

2. That the testimony of *Crofut* was inadmissible. It had no tendency to prove a fraud. The remark of the defendant was perfectly innocent, and had no connexion with the sale to the plaintiff. When irrelevant evidence is admitted, it is ground for a new trial. *Stow* v. *Converse,* 3 *Conn. R.* 325. *Wheeler* v. *Parker,* 4 *Conn. R.* 102. *Robbins* v. *Harvey,* 5 *Conn. R.* 335. *Riley* v. *Gourley,* 9 *Conn. R.* 154.

3. That the evidence of the assignments of the fifteen counties in *Tennessee,* was inadmissible. The law requires that they should be *recorded.* *Act of Congress* 1793. *Fess. L. Pat.* 393. *sec.* 4. The rights of the assignee depend upon the recording. The subsequent statutes, particularly that of 1836, require the assignment to be recorded. The whole subject, involving the rights of assignees, as well as inventors, is a matter of statutory creation. A patent is regarded as a monopoly, and should be construed *strictly.* *Fess. L. Pat.* 37. It does not appear that the assignees in *Tennessee* ever made any claim. The plaintiff had no right to set up a claim for them.

*Bissell* and *Booth,* (with whom was *Loomis,*) contra, contended, 1. That the allowance of the amendment was not a ground of reversing the judgment. In the first place, the amendment did not change the *form* or *ground* of action. It will not be claimed, that there was any change in the form of the action. Neither was there any change in the ground of it. That is not changed, so long as the identity of the contract is not destroyed. *Peck* v. *Sill,* 3 *Conn. R.* 157. Here, upon comparing the new count with the others, it is apparent, that the plaintiff proceeds in all upon the same contract, for the same cause. The utmost which can be claimed, is, that another *breach* is set out; but this is clearly an allowable

amendment. *Sterne* v. *Trott,* 11 *Conn. R.* 559. *Clark* v. *Swift,* 3 *Metc.* 390. *Atkinson* & al. v. *Bell* & al. 8 *B. & Cres.* 277. (15 *E. C. L.* 216.) *Leighton* v. *Leighton,* 1 *Mass. R.* 433. *Cumings* v. *Rawson,* 7 *Mass. R.* 440. *Horston* v. *Shilliter,* 6 *J. B. Moore* 490. (17 *E. C. L.* 51.) *Dale* v. *Gordon,* 3 *Moore & Scott,* 339. (30 *E. C. L.* 307.) *Haynes* & ux. v. *Morgan,* 3 *Mass. R.* 208. 210. *Mixer* v. *Howarth,* 21 *Pick.* 205. *Phillips* & al. v. *Bridge,* 11 *Mass. R.* 242. 246. *Tourtelot* v. *Tourtelot,* 4 *Mass. R.* 506. *Hancock* v. *Wentworth,* 5 *Metc.* 446. 451. *Wyatt* v. *Cocks* & ux. 10 *J. B. Moore* 504. (17 *E. B. L.* 154.) *Prior* v. *Duke of Buckingham,* 8 *J. B. Moore* 584. (17 *E. C. L.* 114.) But secondly, the allowance of amendments is a matter of *discretion,* and not the subject of error. *Stat. tit.* 2. *s.* 33. *Betts* v. *Hoyt,* 13 *Conn. R.* 469. This court, as a revisionary tribunal, will not interfere with the judge on the circuit, in the exercise of his discretion, though clearly wrong. *Tomlinson* v. *Bollard,* 4 *Ad. & El. N. S.* 642. (45 *E. C. L.* 642.)

2. That *Crofut's* testimony was admissible. It was not offered to prove, that in this case, the defendant took the note, in the manner referred to. That was proved by independent evidence. The declaration of the defendant was part of a long conversation between him and the witness, about the sale in question. It was proper for the plaintiff to prove all the circumstances attending the transaction. Whether the declaration of the defendant referred to this sale, was a question for the jury to determine. The court will presume that the testimony was relevant, unless the defendant shows that it was irrelevant. This does not appear from the motion. 2 *Stark. Ev.* 737, 8. 740. *Gardner* v. *Preston,* 2 *Day* 205. *Butts* & al. v. *Tiffany* & al. 21 *Pick.* 95.

3. That evidence to prove the existence of the original deed from *Raymond* to *Rogers,* of *November* 4th, 1837, was properly received, notwithstanding it did not appear to have been recorded. The object of the act of Congress, in requiring the assignment to be recorded, was not to confer a title, but to give notice to purchasers and creditors. 1 *Sto. Eq. s.* 395. 397. The recording of a deed in this state, has no effect in the transfer of a title. This is effected by the execution and delivery of the deed alone. So a certificate of discharge under our insolvent law, though required by statute to be re-

corded, takes effect from the delivery. *Witter* v. *Latham*, 12 *Conn. R.* 392.

ELLSWORTH, J. The first question is, as to the propriety of the amendment, made by inserting the fourth count. Some, if not each of the other counts, set forth substantially the same ground of action,—the same injury,—the same complaint,— *viz.* fraud in the sale of a certain patent-right for an undivided fourth part of the states of *Mississippi* and *Tennessee*, excepting eighteen counties in the latter state. The new count contains only a further and more minute statement of the manner and extent of the injury. If authorities were wanted to sustain the amendment, the following are decisive. *Prior* v. *Duke of Buckingham*, 8 *J. B. Moore* 584. (17 *E. C. L.* 114.) *Wyatt* v. *Cocks* & ux. 10 *J. C. Moore*, 504. (17 *E. C. L.* 154.) *Brown* v. *Crump*, 6 *Taun.* 800. S. C. 1 *Marsh.* 609. *Atkinson* & al. v. *Bell* & al. 8 *B. & Cres.* 277. (15 *E. C. L.* 216.) *Dale* v. *Gordon*, 3 *Moore & Scott*, 339. (30 *E. C. L.* 307.) *Mixer* v. *Howarth*, 21 *Pick.* 205. *Hancock* v. *Wentworth*, 5 *Metc.* 446. 451. *Philips* & al. v. *Bridge*, 11 *Mass. R.* 242. 246. *Cumings* v. *Rawson*, 7 *Mass. R.* 440. *Leighton* v. *Leighton*, 1 *Mass. R.* 433.

The objection to the testimony of *Crofut* is equally groundless. After he had narrated a conversation between himself and *Bacon*, the defendant, of some two hours' length, about the sale of this patent to the plaintiff, in the course of which the defendant said, " that the best way of selling patent-rights, was, taking negotiable notes and indorsing them, that no questions could be made about the patents ;" he said, on cross-examination, that he did not know, that this remark was connected with the other conversation. It will be recollected, that the plaintiff had claimed, that this mode of selling a patent-right, was the exact thing done in this case ; and that the son of the defendant had sued the plaintiffs on one of the notes for 500 dollars, given for this patent-right, and had recovered. Much other testimony had been introduced in connexion with said conversation and said remark, to prove the fraud alleged. We cannot say, the remark of the defendant might not be relevant and important. The doubt or speculation of the witness can avail nothing. The jury were to judge of the connexion and effect of the parts of this extended

conversation. Besides, this is the defendant's motion; and it belongs to him to show that this testimony could not be relevant; whereas we think it might have been, and in fact, was, relevant and important.

The defendant objects, that, at the time of his sale to the plaintiff, he had the right which he sold, notwithstanding the prior deeds from *Stephen Rogers,* of ten counties in *Tennessee* to *Oscar Willis,* and five to *Abner B. Jones;* because, he says, the deeds to *Willis* and *Jones,* from their grantor, *Stephen Rogers,* were given before the deed from *Raymond* to *Rogers* was recorded. The defendant, before he purchased, well knew of the existence and contents of that deed, though it had not been recorded; and that the deed of *Raymond* to *Rogers,* dated the 24th of *June* 1839, and recorded the 2nd day of *August* 1839, was a substitute for the lost deed. The court below correctly held, that actual notice to the defendant prevented *him* from setting up this weakness in the titles of *Willis* and *Jones.* Recording is no constituent part of the conveyance, and is required only to give notice. Our own statute requiring deeds of land to be recorded, is more positive than the 11th section of the patent-law of Congress now in force, and more so than the 4th section of the repealed law of Congress of 1793; but here and elsewhere, under like statutes, courts of equity, at least, have held, that actual notice is enough. This question was decided, as we now hold, under the former patent-law, in *Holden* v. *Curtiss,* 2 *N. Hamp. R.* 61. and, so virtually, in *Dobson* v. *Campbell,* 2 *Sto. R.* 319.

We find no error in the judgment of the superior court; and likewise advise that there be no new trial.

In this opinion the other Judges concurred.

New trial not to be granted.

Judgment affirmed.